# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **Zachary Jenkins,** individually and : on behalf of all others similarly situated, : : Plaintiff, : v. : **Fluent, Inc.,** *et al.* : : Defendants. : _____/ | Case No. 1:23-cv-00558 Judge Jeffery P. Hopkins |

## DEFENDANT ZETA GLOBAL CORP.'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF FOR LACK OF ARTICLE III STANDING

Defendant Zeta Global Corp. ("Zeta") moves, pursuant to 9 U.S.C. § 3, to stay this action and compel arbitration of all claims asserted against Zeta in the Second Amended Complaint ("SAC"; ECF No. 25) filed by Plaintiff Zachary Jenkins ("Plaintiff") because he agreed to arbitrate any disputes against Zeta when he voluntarily provided his personal information (including cell phone number) to request the calls he now complains about.  Alternatively, if arbitration is not compelled, Zeta moves, Pursuant to Rule 12(b)(1), to dismiss Plaintiff's request for injunctive relief because he lacks standing to seek such relief.  A memorandum in support is attached.

Respectfully submitted,

*/s/ Christopher C. Wager*
Christopher C. Wager (0084324)
Walter (Chad) Blackham (0097882)
MAC MURRAY & SHUSTER LLP
6525 W. Campus Oval, Ste. 210
New Albany, Ohio 43054
Telephone: (614) 939-9955
cwager@mslawgroup.com
cblackham@mslawgroup.com

*Counsel for Zeta Global Corp.*

**MEMORANDUM IN SUPPORT**

The SAC asserts a single claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") alleging that Zeta initiated marketing calls to Plaintiff's cell phone in 2023. However, the SAC neglects to acknowledge that, prior to receiving the alleged calls, Plaintiff submitted numerous online requests to be contacted. When Plaintiff submitted these requests, he also agreed to the websites' Terms of Use, which contain a mandatory and binding arbitration agreement and class action waiver. As a result, he is required to arbitrate this dispute.

**I.      FACTUAL BACKGROUND**

Plaintiff complains about receiving certain calls in 2023 from Zeta on his cell phone advertising insurance offerings (the "Calls"). (SAC, ¶¶ 29-34.) However, Plaintiff received the Calls only because he submitted numerous requests to be called, and in so doing, Plaintiff agreed to arbitrate any claims related to the requested calls.

Specifically, during the operative period, Zeta managed several websites, including higherincomejobs.com and onlygreatjobs.com (collectively, the "Sites"), that help put individuals find jobs and request related offerings. (Declaration of Jeffry Nimeroff ("Nimeroff Decl."), attached hereto as Exhibit A, at ¶ 6.) The Sites contain submission pages, where a consumer can enter his or her personal information, contact information, and request calls related to third party offerings. (*Id.*) As set forth below, on numerous occasions, Mr. Jenkins requested the alleged Calls when he interacted with the Sites, and he agreed to arbitrate the claims currently asserted against Zeta.

**A.      The June 6, 2023 Registration on onlygreatjobs.com.**

On June 6, 2023 at or around 6:02 p.m. Eastern Daylight Time, a user identifying himself as "Zachary Jenkins" registered an account on the website onlygreatjobs.com. ( Nimeroff Decl., ¶ 8.) To register on the site, Mr. Jenkins entered information consistent with that of Plaintiff:

| | |
|---|---|
| First Name: | Zachary |
| Last Name: | Jenkins |
| Email Address: | jenkinsz5550@gmail.com |
| Phone: | 614-XXX-4928 |
| Address: | 3420 Furrow Ct |
| City: | Canal Winchester |
| State: | OH |
| Zip Code: | 43110 |

(*Id.*, ¶ 9.)

In the first step of creating a profile and registering on the site (the "Registration Page"), Mr. Jenkins entered his email address and was presented with the following disclosure:



(*Id.*, ¶¶ 11, 15.)

Zeta's records indicate that Mr. Jenkins submitted the Registration Page, after which he was directed to a confirmation page to provide a phone number and date of birth (the "Confirmation Page"):

2



(*Id.*, ¶¶ 16, 18.)

On the Registration Page, the underlined phrase "Terms and Conditions" in the language directly above the call to action contain a hyperlink to the website's terms and conditions (the "OGJ Terms"). (*Id.* ¶ 12.) Likewise, the language on the Confirmation Page directly above the call to action references the user "agree[s] to the … Terms (with Arbitration Agreement)…" (*Id.*, ¶ 16.) The terms are available at the bottom of the webpage through a link to the "Terms & Conditions," and upon clicking the link, the user is taken to the OGJ Terms. (*Id.*, ¶ 19.) Accordingly, the records of Zeta establish that Mr. Jenkins selected the checkbox and submitted the above form. (*Id.*, ¶ 17.)

A true and accurate copy OGJ Terms as they appeared on June 6, 2023 are attached as Exhibit 1 to the Nimeroff Declaration. (*Id.*, ¶ 12.) The third paragraph of the OGJ Terms contains a clear disclaimer in all caps alerting the user to a mandatory arbitration provision:

> **IMPORTANT:** PLEASE REVIEW THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER SET FORTH IN SECTION 17 BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH

3

> US OR OUR MARKETING PARTNERS ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. YOU WILL NOT BE ABLE TO BRING OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN THE TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

(Ex. 1 to Nimeroff Decl.)

Paragraph 17 of the OGJ Terms then establish a dispute resolution process, which first require a claimant to complete a customer support ticket and then submit a formal Dispute Form. (*Id.*, ¶ 17.) Only when this informal dispute process is not followed is a claimant subject to mandatory arbitration before the American Arbitration Association ("AAA"). (*Id.*)

Moreover, the OGJ's arbitration provision expressly covers the alleged Calls that Plaintiff attributes to Zeta:

> YOU AND WE AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF OR RELATING IN ANY WAY TO OUR SERVICE OR YOUR USE OF THE SITE ("Disputes") SHALL BE RESOLVED EXCLUSIVELY IN BINDING INDIVIDUAL ARBITRATION RATHER THAN LITIGATION IN COURT. FOR THE AVOIDANCE OF DOUBT, YOU EXPRESSLY AGREE TO SUBMIT TO ARBITRATION ALL DISPUTES ARISING FROM OR RELATING IN ANY WAY TO ANY PHONE CALLS OR TEXT MESSAGES YOU RECEIVE FROM OR ON BEHALF OF ANY ENTITY WITH WHOM WE MAY SHARE YOUR TELEPHONE NUMBER(S) YOU PROVIDED (INCLUDING OUR MARKETING PARTNERS). Further, you and we both agree that all entities with whom we share your telephone number(s) you provided—including our Marketing Partners—shall be third-party beneficiaries of this agreement to arbitrate and class action waiver and that those entities have the same rights and obligations as Higher Income Jobs with respect to enforcement of this arbitration agreement and class action waiver. Thus, you consent to extend to our Marketing Partners your agreement to arbitrate and to waive your rights to bring or participate in a class or collective action, and you acknowledge that you shall be estopped from denying an obligation to arbitrate covered Disputes with a Marketing Partner.

(*Id.*)

### B. The June 19, 2023 Registration on higherincomejobs.com

A largely identical registration submission was submitted by "Zachary Jenkins" thirteen

4

days later at higherincomejobs.com on June 19, 2023 at 7:55 a.m. EDT.  ( Nimeroff Decl. ¶ 20.)

To register on the site, Mr. Jenkins entered information consistent with that of Plaintiff:

| | |
|---|---|
| First Name: | Zachary |
| Last Name: | Jenkins |
| Email Address: | jenkinsz5550@gmail.com |
| Phone: | 614-XXX-4928 |
| Address: | 3420 Furrow Ct |
| City: | Canal Winchester |
| State: | OH |
| Zip Code: | 43228 |

(*Id.*, ¶ 21.)

During the registration, Mr. Jenkins submitted a confirmation page, again agreeing to the website's terms (with Arbitration Agreement), and requested to be called for marketing offers:



(*Id.* ¶¶ 23, 27.)

Similar to the Confirmation Page submitted thirteen days prior, language directly above

the call to action references that Mr. Jenkins "agree[s] to the … Terms (with Arbitration Agreement)…" (*Id*.) The terms are available at the bottom of the webpage through a link to the "Terms & Conditions," and upon clicking the link, the user is taken to the website terms for higherincomejobs.com, which are materially identical to the OGJ Terms. (Nimeroff Decl. ¶ 25.) Accordingly, the records of Zeta establish that Mr. Jenkins selected the checkbox and submitted the above form. (*Id*. ¶ 24.)

## II. LAW AND ARGUMENT

### A. Motion to Compel Arbitration

#### 1. Applicable Legal Standard

Sections 3 and 4 of the Federal Arbitration Act (the "FAA") "provide[] for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C.A. §§ 3 and 4); *see also Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 836 (6th Cir. 2021). The Sixth Circuit succinctly outlined the operative considerations in addressing an agreement to arbitrate:

> Manifesting a liberal federal policy favoring arbitration agreements, the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements. Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Javitch*, 315 F.3d at 624 (internal quotations and citations omitted).

Upon a determination that an agreement to arbitrate exists, a court may compel arbitration as a matter of law. *See Page v. GameStop Corp.*, Case No. 24-3428, 2025 WL 637441, at *4 (6th Cir. Feb. 27, 2025) (holding that "the district court was not required to conduct a summary trial

and properly compelled arbitration on the [written] record before it"); *Wells Fargo Clearing Servs., LLC v. Satter*, Case No. 1:22-CV-539, 2025 WL 1582253, at *1 (S.D. Ohio June 4, 2025) ("If the agreement to arbitrate is not 'in issue,' then the court must compel arbitration.").

Plaintiff, as the non-moving party, bears the initial burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017). In addressing disputes of fact, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003).

### 2. A Valid Written Arbitration Agreement Exists

"[T]he first question is whether a valid agreement to arbitrate exists between the parties," a question addressed under the "state law of contract formation." *Stansberry v. Raising Cane's USA, LLC*, Case No. 1:22-CV-543, 2022 WL 17958778, at *3 (S.D. Ohio Dec. 27, 2022), report and recommendation adopted, Case No. 1:22-CV-543-JPH-KLL, 2023 WL 6200314 (S.D. Ohio Sept. 22, 2023). Under Ohio law, "'clicking through relevant screens … is an acceptable method to manifest assent to the terms of an agreement' even where disputed terms are contained in a hyperlink." *Carey v. Uber Techs., Inc.*, Case No. 1:16-CV-1058, 2017 WL 1133936, at *4 (N.D. Ohio Mar. 27, 2017) (quoting *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 217 (Ohio App. 6th Dist. 2015)). The operative question is whether "the existence of the terms was reasonably communicated to the user." *Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 768 (N.D. Ohio 2024). Applying Ohio law, Courts have uniformly held that similar fact patterns support a finding that a valid and enforceable agreement to arbitrate exists.

In *Adelstein*, the consumer placing an online order with Walmart was presented with language stating: "By placing this order, you agree to our Privacy Policy and Terms of Use." *Id*.

7

at 768. Notably, the text referencing the terms "is linked in grey directly above the 'Place Order' button," such that the court concluded that the terms were "reasonably communicated to Plaintiff," thereby leading the court to conclude that "[t]here is a valid and enforceable arbitration agreement between the parties." *Id*.

Likewise, the Sixth Circuit addressed a pin pad at an in-store kiosk, which informed the consumer that terms "are available in hard copy from any associate." *Page*, 2025 WL 637441 at *3. Even without direct access to the terms, the Sixth Circuit concluded that "the situation here— in which [plaintiff] was notified he was assenting to the terms and informed he could ask a sales associate for a copy—presented [him] with an adequate opportunity to review the terms before clicking 'I Agree.'" *Id*. ("Just as someone who agrees to terms presented via a hyperlink can be bound even without clicking the link or reading them, by pressing 'I Agree; when he had the opportunity to review, Page assented to the [] Terms, including arbitration.").

Here, Plaintiff clearly and unequivocally manifested his consent to the arbitration provision on multiple occasions.

First, during his June 6, 2023 interaction on the Registration Page at onlygreatjobs.com, affirmed that he "agree[d] to the Privacy Policy and Terms and Conditions" by submitting the form and enrolling for services. The Terms and Conditions are clearly marked as a link through the underlined text, and upon clicking the link, a user is directly linked to written terms containing the mandatory arbitration provision. As such, this interaction is factually indistinguishable from the facts of *Adelstein*, with the existence of the terms (and the included arbitration provision) "reasonably communicated to the user." *Adelstein*, 728 F. Supp. 3d at 768.

Second, Plaintiff separately and independently agreed to the arbitration provisions when he submitted confirmation pages on onlygreatjobs.com and higherincomejobs.com on June 6 and

8

June 19, respectively. Notably, Plaintiff's agreement to arbitrate is only more manifest in this instance because the terms that he agreed to expressly specified "(with Arbitration Agreement)" on the operative disclosure language above the submission button. The fact that the terms were accessible through clicking a link at the bottom of the page does not undermine that the terms (and the existence of an arbitration agreement) were communicated to Plaintiff, and he manifested agreement through clicking a checkbox next to "I Agree" and then submitting the form. With the Sixth Circuit's holding that the ability to request a paper copy of terms from a store employee provides adequate availability, there can be no question that clicking a link on the same webpage is more than adequate. *Page*, 2025 WL 637441 at *3.

Based on the foregoing, notice of arbitration-containing terms were conspicuous to Plaintiff, and his decision to select an "I Agree" checkbox and submit the attendant forms constituted his agreement to be bound by the terms, including the arbitration provision therein.[1]

### 3. Plaintiff's TCPA Claims Fall within the Agreement to Arbitrate.

In determining the scope and enforceability of an arbitration agreement, the Sixth Circuit recognizes that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)). "And when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement—even if a particular argument for arbitration seems to be 'wholly groundless.'" *Id*.

---

[1] Defendant does not anticipate that Plaintiff will dispute that he interacted with the websites as outlined in this Motion. However, any such denial would, at best, create a material issue of fact that the FAA requires be resolved through an evidentiary hearing or trial. 9 U.S.C. § 4 ("If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.")

9

The question as to whether an agreement reserves arbitrability questions to the arbitrator is conclusively established where the agreement incorporates the AAA rules:

> every one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.' …. Indeed, it's possible that our circuit has already joined too. [] But to the extent that there's any ambiguity in our prior decisions, we officially do so today."

*Id*. at 846.

Here, the Terms specify that the American Arbitration Association's rules control any dispute:

> Arbitration shall be conducted by the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules and Consumer Related Disputes Supplemental Procedures. Those rules are available at www.adr.org. or by calling the AAA at 1-800-778-7879.

(Ex. 1 to Nimeroff Decl.)

The reservation of arbitrability to the AAA means that any questions as to whether the claim and parties are within the scope of the agreement are expressly reserved for the AAA. The existence of the agreement to arbitrate is adequate in itself to compel the Court to stay this matter in favor of the parties' agreed-upon alternative dispute procedures.

Further, even if the Court were to independently evaluate the scope of arbitrable disputes, the terms unequivocally state that any dispute related to Plaintiff's "use of the site" – i.e., the provision of his phone number and request to be contacted – is subject to mandatory arbitration. (Ex. 1 to Nimeroff Decl., ¶ 17.) Moreover, the terms similarly state that "you and we both agree that all entities with whom we share your telephone number(s) you provided …shall be third-party beneficiaries of this agreement to arbitrate and class action waiver and that those entities have the same rights and obligations … with respect to enforcement of this arbitration agreement and class

action waiver." (Id.)  As a result of Plaintiff's registration on the Sites and request to be contacted, he provided Zeta his phone number and any claims related to the Calls is squarely within the scope of the agreement to arbitrate.

### B. Motion to Dismiss Claims for Injunctive Relief

Plaintiff bears the burden of demonstrating Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To plead Article III standing, Plaintiff must plead sufficient facts demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there must be a causal connection between the injury and the conduct complained of (a.k.a. causation or "traceability"), and (3) the injury is capable of being redressed by a favorable decision (a.k.a. "redressability"). *Id*. at 338.  A plaintiff's failure to establishing Article III standing requirements is redressed through dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff purports to seek injunctive relief "prohibiting Defendants …. From making telemarketing calls to numbers on the National Do Not Call Registry…." *See* SAC, ¶ 74; Prayer for Relief, ¶ G.  Such a request is flawed. Plaintiff lacks Article III standing to seek injunctive relief, which would require her to establish "continuing, present adverse effects" traceable to Defendant's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Sowders v. Scratch Fin., Inc.*, Case No. 3:23-CV-56, 2023 WL 7525900, at *7 (S.D. Ohio Nov. 14, 2023) (dismissing request for injunctive relief in TCPA case for lack of standing where there was nothing suggesting the possibility of future injuries).

Plaintiff has not and cannot establish the requisite conduct to create Article III standing to seek injunctive relief.  Plaintiff alleges that he received the calls at issue during the summer of 2023, over two years ago.  (SAC, ¶ 29.) Because Plaintiff asserts "no additional allegations that would allow the Court to infer any ongoing harm in violation of the TCPA, ….[Plaintiff] lacks

11

standing to seek injunctive relief in this action." *Sowders*, 2023 WL 7525900, *7. *See also Zononi v. CHW Grp., Inc.*, No. 22-CV-14358, 2023 WL 2667941, at *5 (S.D. Fla. Mar. 7, 2023) ("Here, Defendant argues the FAC fails to allege facts that show a likelihood of future injury, and the request for injunctive relief should therefore be dismissed []. The Court agrees.")

To the extent it reaches this issue, Zeta requests that the Court reach the same conclusion here and dismiss Plaintiff's request for injunctive relief.

### III. CONCLUSION

For the foregoing reasons, Zeta respectfully requests that the Court grant this motion, compel arbitration and stay this case pending the conclusion of arbitration. In the alternative, Zeta moves, pursuant to Rule 12(b)(1), to dismiss Plaintiff's request for injunctive relief.

Respectfully submitted,

/s/ *Christopher C. Wager*
Christopher C. Wager (0084324)
Walter (Chad) Blackham (0097882)
MAC MURRAY & SHUSTER LLP
6525 W. Campus Oval, Ste. 210
New Albany, Ohio 43054
Telephone: (614) 939-9955
cwager@mslawgroup.com
cblackham@mslawgroup.com

*Counsel for Zeta Global Corp.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing a copy of the foregoing document to be served on all counsel of record via Notice of Electronic Filing.

/s/ *Christopher C. Wager*