## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ZACHARY JENKINS, on behalf of himself and others similarly situated,**

        **Plaintiff(s),**

   **v.**

**FLUENT, INC.,**

        **Defendant.**

Case No. 1:23-cv-00558-JPH

Judge Jeffery P. Hopkins

ORAL ARGUMENT REQUESTED

## DEFENDANT'S MOTION TO DISMISS

Defendant Fluent, Inc. respectfully submits this Motion seeking an Order dismissing Plaintiff's Second Amended Class Action Complaint in the above-entitled action, pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). The basis for this motion is set forth in the accompanying Memorandum of Law.

Dated: December 10, 2025                         Respectfully submitted,


/s/ *Jeffrey T. Perry*
Jeffrey T. Perry (#0088989)
CAMPBELL PERRY, LLC
7240 Muirfield Drive, Suite 120
Dublin, OH 43017
(614) 668-8442
(614) 675-2210 fax
*jeff@campbellperrylaw.com*


/s/ *Jason B. Sykes*
Jason B. Sykes (#44369)
NEWMAN LLP
1201 Second Avenue, Suite 900
Seattle, WA  98101
(206) 274-2800
(206) 274-2801
*jason@newmanlaw.com*
(*Pro Hac Vice* application forthcoming)

*Counsel for Fluent, Inc.*

# TABLE OF CONTENTS

MEMORANDUM OF LAW IN SUPPORT OF ............................................................................1

MOTION TO DISMISS ........................................................................................................1

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

    A.    The SAC confirms that Zeta made all of the telemarketing calls and asserts only conclusory allegations tying Fluent to Ohio.............................................................. 2

    B.    Fluent operates an out-of-state intermediary platform with no involvement in dialing Plaintiff's number and no Ohio-directed conduct related to the call-transfer activity at issue. ................................................................................................................ 3

ARGUMENT ................................................................................................................... 4

    A.    The Court should dismiss the SAC under Rule 12(b)(1) for lack of Article III standing. ..................................................................................................... 4

    B.    The Court lacks personal jurisdiction over Fluent because Plaintiff does not allege general jurisdiction and the record does not support specific personal jurisdiction.... 8

    C.    The SAC fails to state a claim against Fluent and must be dismissed per Rule 12(b)(6).................................................................................................15

CONCLUSION ................................................................................................................18

**CERTIFICATE OF SERVICE** ............................................................................... 20

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant Fluent, Inc. ("Fluent") respectfully moves the Court to dismiss Plaintiff's Second Amended Complaint ("SAC") (Dkt. No. 25) because the Court lacks subject matter jurisdiction over this matter, lacks personal jurisdiction over Fluent, and because Plaintiff fails to state a claim against Fluent.

## INTRODUCTION

Plaintiff's Second Amended Complaint and the declarations before this Court confirm that Plaintiff cannot proceed with his claims against Fluent.

**First**, the SAC identifies Zeta—not Fluent—as the party that initiated and controlled the challenged telemarketing calls. Fluent did not place those calls, did not direct those calls, and had no knowledge of Plaintiff's physical location when the single call transfer referenced in the SAC occurred. Because Plaintiff's alleged injury arises solely from Zeta's alleged independent dialing, he cannot establish Article III standing as to Fluent—so this Court lacks subject matter jurisdiction.

**Second**, the SAC contains no factual allegations connecting Fluent to Ohio. Fluent is incorporated in Delaware, headquartered in New York, and maintains no Ohio offices or operations relevant to the conduct at issue. The lone call-transfer event involving Zeta and Amerilife occurred entirely outside Ohio, and Fluent did not know the consumer on that call was located in Ohio. The SAC's generalized references to Fluent's nationwide business relationships and remote personnel do not establish purposeful availment or satisfy Ohio's long-arm statute.

**Third**, even accepting the SAC's allegations as true, the complaint does not state a claim against Fluent under the TCPA. The SAC concedes that Fluent did not initiate the calls and instead attempts to impose vicarious liability through conclusory assertions of "control," "direction," and "benefit." But the SAC alleges no facts showing that Fluent authorized, supervised, or ratified Zeta's calling activity, and the undisputed record establishes that Zeta

1

alone determined whom to call and when.

Finally, Plaintiff has now amended his pleading multiple times, and none of the amendments cure the fundamental deficiencies in his claims against Fluent. The allegations in the SAC, together with the sworn declarations before this Court, confirm that Fluent did not make—and did not cause to be made—the calls at issue. The Court should dismiss Plaintiff's claims against Fluent without leave to amend as further amendment would be futile.

## BACKGROUND

### A. The SAC confirms that Zeta made all of the telemarketing calls and asserts only conclusory allegations tying Fluent to Ohio.

On September 6, 2023, Plaintiff filed a complaint against MCC Brokerage, LLC, alleging violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Dkt. No. 1.) Specifically, Plaintiff claimed he received unsolicited telemarketing calls in violation of the TCPA and that those calls were made on behalf of MCC Brokerage. Plaintiff then filed a First Amended Complaint, substituting Fluent for MCC Brokerage as the defendant and accusing Fluent of making the calls at issue. (Dkt. No. 19.)

In the face of Fluent's Motion to Dismiss, Plaintiff filed a Second Amended Complaint adding Zeta Global Corp. ("Zeta") as a defendant. (Dkt. No. 25 ("SAC").) In this iteration of the complaint Plaintiff expressly alleges that Zeta—not Fluent—made the phone calls at issue. (SAC ¶¶ 2, 29.) Plaintiff does not allege that Fluent initiated any calls to him. Instead, the SAC asserts that Fluent is liable for Zeta's conduct under theories of agency and vicarious liability. (SAC ¶¶39–57.)

Plaintiff's jurisdictional allegations against Fluent are sparse and conclusory. The Second Amended Complaint asserts that that Fluent "regularly engages in business in this District" and "makes telemarketing calls into this District" (SAC ¶12), that it operates "a call-transfer marketplace that necessarily includes Ohio residents" (SAC ¶13), and that Fluent "purposefully availed itself of the privilege of conducting business in Ohio" because its platform allegedly "facilitated the transfer of at least one of Plaintiff's calls." (SAC ¶14.) Plaintiff further alleges that Fluent's contracts with publishers and advertisers demonstrate Fluent's involvement in

telemarketing directed into Ohio and that it maintains an "ongoing workforce presence in Ohio". (SAC ¶¶15-16.)

**B. Fluent operates an out-of-state intermediary platform with no involvement in dialing Plaintiff's number and no Ohio-directed conduct related to the call-transfer activity at issue.**

As noted above, the SAC does not allege that Fluent dialed Plaintiff, chose his telephone number, controlled Zeta's dialing campaign, instructed Zeta to place calls, or ever communicated with Plaintiff. Instead, the SAC relies on generalized allegations about Fluent's nationwide advertiser and publisher relationships (SAC ¶¶15, 40–51), a small "workforce presence" in Ohio (SAC ¶16), and references to regulatory settlements unrelated to Ohio or this case (SAC ¶¶46–48). None alleges Ohio-directed conduct by Fluent.

Fluent's Vice President of Data Privacy and Compliance provided a sworn declaration in support of Fluent's prior motion to dismiss explaining Fluent's tangential connection to Ohio generally and this lawsuit in particular. (*See* Declaration of Jeff Richard ("Richard Decl.") at Dkt. No. 24-1.) Most importantly, Fluent did not make the alleged telemarketing calls to Plaintiff, nor did it ask any company to make those calls. (Richard Decl. ¶13.) Instead, Fluent operates a platform that processes call transfers originating from third-party call centers and connects them to third parties. (*Id.* ¶14.) Fluent's only involvement in this matter was serving as an intermediary platform connecting Zeta Global Corp. (the entity that made the call) with AL Marketing, LLC d/b/a Amerilife (the entity that received it) for one of the calls alleged in Plaintiff's complaint. (*Id.* ¶15.) At no point did Fluent have any contact with the consumer— Fluent never answered the transferred call, never spoke to Plaintiff, and served only as an automated intermediary platform that facilitated the connection between Zeta and Amerilife. (*Id.* ¶16). Critically, Fluent never requested that Zeta make any calls, either on Fluent's behalf or on behalf of any third-party advertiser. (*Id.* ¶17.) And Fluent's activity did not entail any connection to Ohio. (*Id.* ¶18.)

Fluent is incorporated in Delaware and has its principal place of business in New York. (Richard Decl. ¶3.) Fluent does not have offices in Ohio and has only one Ohio-based remote

employee, and one Ohio-based remote contractor, neither of whom have any connection to Plaintiff's claims. (*Id.* ¶¶4-8.) Fluent is not licensed to do business in Ohio, does not use any Ohio banks, and does not own any real property in Ohio. (*Id.* ¶¶9-11.)

Even the business transaction through which Fluent facilitated the transfer between Zeta and Amerilife had no nexus to Ohio—neither Zeta nor Amerilife is an Ohio company—and the arrangement was negotiated and performed entirely outside Ohio. (*Id.* ¶18.) No business relationships relevant to the call-transfer activity at issue were negotiated with or directed to Ohio-based companies or residents, and the call-transfer activity at issue was not targeted toward Ohio residents or Ohio-based entities. (Second Declaration of Jeff Richard ("Second Richard Decl.") ¶4.)

At the time of the transfer at issue, Fluent did not know and had no way to determine that the consumer on the call was physically located in Ohio. (Second Richard Decl. ¶5.) The platform that facilitated the call-transfer at issue in this case does not initiate outbound calls, and Fluent did not control Zeta's alleged decision to call Plaintiff. (*Id.* ¶6.) Zeta alone determined whom to call, when to call, and how often to call. (*Id.*) Fluent never directed Zeta to make any of the calls at issue in this case. (*Id.* ¶7.) And Fluent never gave Zeta any authority to call the Plaintiff (or anyone else) on Fluent's behalf or on behalf of any third-party advertisers. (*Id.*) In sum, Fluent played no role in selecting Plaintiff's telephone number or initiating any call to him, and had no ability to determine that he was physically located in Ohio.

## ARGUMENT

### A. The Court should dismiss the SAC under Rule 12(b)(1) for lack of Article III standing.

Article III standing is a "threshold determinant of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–518 (1975). A federal court may not assume jurisdiction to reach the merits; it must first satisfy itself that the plaintiff has standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The Sixth Circuit likewise holds that standing must be addressed at the outset. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020). In doing so, the Court may examine the pleadings and any evidence put forward by the parties.

*Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014).

To establish standing, a plaintiff must show (1) a concrete and particularized injury in fact, (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Each element is an "irreducible constitutional minimum." *Id.* The causation element is not satisfied when the injury is "th[e] result [of] the independent action of some third party not before the court." *Doe v. DeWine*, 910 F.3d 842, 849–50 (6th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560–561). And in the class context, "Named Plaintiffs must tie the injury to each Defendant"; they may not rely on undifferentiated allegations against a group of defendants. *Ivanoff v. Walmart Inc.*, No. 1:20-cv-00896-JPH, 2025 WL 2207924, at *5 (S.D. Ohio Aug. 4 2025).

Here, Plaintiff's own allegations and the undisputed record show that his alleged injury is not fairly traceable to Fluent's conduct and would not be redressed by relief against Fluent.

1. **Plaintiff's alleged injury is not fairly traceable to Fluent because the SAC affirmatively pleads that Zeta, not Fluent, initiated and controlled the calls and because the allegations of agency are too conclusory.**

Traceability requires "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up); *DeWine*, 910 F.3d at 849–50. Where a plaintiff's harm depends on the independent decisions of another actor, Article III causation fails. *Warth*, 422 U.S. at 505; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976).

The SAC expressly attributes the challenged calling conduct to Zeta, not Fluent. It alleges that "Zeta made telemarketing calls" to Plaintiff's number and that "Zeta placed telemarketing calls to Plaintiff's number throughout 2023." (SAC ¶¶ 2–3, 29, 71.) The SAC does not allege that Fluent dialed Plaintiff's number, selected his number for inclusion in any calling list, controlled Zeta's dialing campaign, instructed Zeta to call Plaintiff, or otherwise initiated or placed any calls.

The record confirms this pleading distinction. Fluent's Vice President of Data Privacy and

Compliance attests that Fluent "did not make the alleged telemarketing calls to Plaintiff" (Richard Decl. ¶ 13), that "Fluent never requested that Zeta make any of the calls at issue in this case" (*id*. ¶ 17), and that Fluent's only involvement was operating an automated platform that facilitated a call transfer after Zeta had already initiated the call. (*Id*. ¶¶ 15–16.) The supplemental declaration further explains that the platform "is not capable of initiating outbound telephone calls" and that "Fluent played no role in Zeta's decision to call Plaintiff." (Second Richard Decl. ¶ 6.) Fluent "never directed Zeta to make any of the calls at issue in this case" and "did [not] give Zeta any authority to call the Plaintiff (or anyone else) on Fluent's behalf or on behalf of any third-party advertisers." (Second Richard Decl. ¶ 7.)

On these allegations and facts, Plaintiff's claimed injury flows from Zeta's independent decision to call him, not from any conduct by Fluent. Article III does not permit a plaintiff to sue one entity based solely on the alleged unlawful acts of another, absent well-pled facts tying the injury to "each Defendant." *Ivanoff*, 2025 WL 2207924, at *5. Because the SAC and the evidence show that Zeta alone initiated and controlled the challenged calls, Plaintiff cannot satisfy the traceability requirement as to Fluent.

Nor can Plaintiff salvage traceability by recasting Zeta's conduct as Fluent's through bare assertions of "agency" or "on behalf of" liability. As the Supreme Court has emphasized, standing is not "dispensed in gross"; the causal inquiry remains defendant-specific and turns on the defendant's own conduct, not legal labels. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *DeWine*, 910 F.3d at 849–50; *Ivanoff*, 2025 WL 2207924, at *5.

The SAC contains boilerplate allegations that Zeta acted "on behalf of" Fluent and that Fluent "controlled" or "benefitted from" Zeta's calling. (*See, e.g.*, SAC ¶¶ 39–57.) But those allegations are devoid of supporting facts. Plaintiff does not allege, for example, that Fluent:

- provided Zeta with Plaintiff's number;

- instructed Zeta to call Plaintiff;

- exercised control over who Zeta called, when it called, or how often it called;

- supervised or monitored Zeta's dialing operations; or

- had any communication or contact with Plaintiff at all.

To the contrary, the undisputed record establishes that Zeta alone determined whom to call, when to call, and how often to call. (Second Richard Decl. ¶ 7.) Fluent did not and could not initiate calls (Richard Decl. ¶¶ 13, 17; Second Richard Decl. ¶ 6), and Fluent did not know and had no way to determine that the consumer on [the transferred] call was physically located in Ohio at the time of the transfer. (Second Richard Decl. ¶ 5.)

In these circumstances, Plaintiff's injury remains the result of "the independent action of some third party" (*Zeta*), not Fluent. *DeWine*, 910 F.3d at 849–50 (quoting *Lujan*, 504 U.S. at 560–61). Conclusory agency buzzwords cannot manufacture the causal connection Article III demands, particularly where, as here, they are contradicted by unrebutted record evidence. Plaintiff has therefore not "t[ied] the injury to" Fluent, as required. *Ivanoff*, 2025 WL 2207924, at *5.

### 2. Plaintiff's claims are non-redressable because relief against Fluent would not prevent or remedy the alleged injury.

Redressability requires a plaintiff to show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" against this defendant. *Lujan*, 504 U.S. at 561. Where the alleged harm is caused solely by the conduct of another actor, courts routinely find redressability lacking. *Simon*, 426 U.S. at 41–42.

Here, Plaintiff's alleged injury—receipt of unsolicited calls—would have occurred in exactly the same way even if Fluent had never existed. The SAC alleges that Zeta made the calls (SAC ¶¶ 2–3, 29, 71), and the record confirms that Zeta alone decided whom to call and when. (Second Richard Decl. ¶ 7.) Fluent did not initiate the calls (Richard Decl. ¶ 13), did not request that Zeta make any of the calls at issue (id. ¶ 17), did not control Zeta's dialing decisions (Second Richard Decl. ¶ 6–7), and had no knowledge of Plaintiff's number or location at the time of the transfer. (Second Richard Decl. ¶¶ 5–7.) Fluent had no contact with Plaintiff at all. (Richard Decl. ¶ 16.)

Under these facts, an injunction against Fluent would not prevent Zeta—or any other third party—from placing calls to Plaintiff. Likewise, an award of damages against Fluent would not redress an injury caused by Zeta's independent actions. Because "Named Plaintiffs must tie the injury to each Defendant," *Ivanoff*, 2025 WL 2207924, at *5, and Plaintiff cannot show that relief

against Fluent would likely prevent or remedy the alleged harm, redressability is not satisfied.

Because Plaintiff has not carried his burden to show that his alleged TCPA injury is fairly traceable to, or redressable by relief against, Fluent, he lacks Article III standing to sue Fluent in this Court. The claims against Fluent must be dismissed under Rule 12(b)(1).

**B.    The Court lacks personal jurisdiction over Fluent because Plaintiff does not allege general jurisdiction and the record does not support specific personal jurisdiction.**

A plaintiff must establish personal jurisdiction over each defendant and cannot rely on mere allegations or legal conclusions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458–60 (6th Cir. 1991). When a defendant submits evidence rebutting jurisdiction, the plaintiff must "set forth specific facts" showing that jurisdiction exists. *Id.* at 1458. Courts may consider sworn declarations, and defendants are not "left unprotected from the plaintiff's bald written allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

The SAC alleges no facts demonstrating that Fluent directed conduct toward Ohio. Instead, it offers generalized assertions that Fluent "makes telemarketing calls into this District," "regularly engages in business in this District," or "purposefully availed" itself of Ohio through nationwide conduct. (SAC ¶¶ 12–16.) Such conclusory statements do not satisfy the Sixth Circuit's jurisdictional standards.

To the contrary, the record before the Court establishes that Fluent did not initiate the calls, did not know Plaintiff was in Ohio, did not direct Zeta's calling, and had no Ohio-directed business relating to the call-transfer at issue. (Richard Decl. ¶¶ 3–18; Second Richard Decl. ¶¶ 4–7.) Plaintiff cannot manufacture jurisdiction from these facts and his case against must be dismissed under Fed. R. Civ. P. 12(b)(2).

**1.    Ohio's long-arm statute does not reach Fluent.**

Unlike other jurisdictions, Ohio does *not* have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of federal due process law. *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994); *Brunner v. Hampson,* 441 F.3d 457, 465 (6th Cir. 2006). So, in Ohio,

personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Due Process Clause. *Conn v. Zakharov,* 667 F.3d 705, 712–13 (6th Cir. 2012); *Kauffman Racing Equip., L.L.C. v. Roberts,* 930 N.E.2d 784, 790 (Ohio 2010).

The statute at issue—Ohio Rev. Code § 2307.382(A)—lays out nine bases for jurisdiction. Here, Plaintiff alleges that Fluent is subject to jurisdiction under the statute's provisions regarding transacting business (Subsection A(1)), contracting to supply services (A(2)), and causing tortious injury in Ohio (A(3)). (SAC ¶ 17.) None of these allegations bear scrutiny.

Subsection (A)(1) permits jurisdiction when a defendant "transact[s] any business in this state," but only as to causes of action arising from that transaction. While Plaintiff alleges that his cause of action arises from Fluent making telemarketing calls to him in Ohio, this allegation is demonstrably false. Again, Fluent did not make the calls—Zeta Interactive did. Nor did Zeta make the calls on Fluent's behalf. So Plaintiff's claims cannot arise from Fluent "transacting business" through telemarketing calls it never made.

Courts evaluate the "transacting any business" test on a case-by-case basis through a fact-sensitive analysis. *Marrik Dish Co., LLC v. Wilkinson CGR Cahaba Lakes, LLC*, 835 F. Supp. 2d 449, 453 (N.D. Ohio 2011). Two factors have emerged as important guideposts: (1) whether the defendant reached out to the plaintiff in the forum state to create a business relationship; and (2) whether the parties conducted their contract negotiations in the forum state or agreed on terms affecting the forum state. *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 828 (S.D. Ohio 2021) (citing *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209–10 (Ohio 2005)). "[M]erely directing communications to an Ohio resident for the purpose of negotiating an agreement" or fulfilling a contract, "without more, is insufficient to establish that a defendant transacts business in the state." *Indus. Fiberglass Specialties, Inc. v. ALSCO Indus. Prods.*, No. 3:08-cv-0351, 2009 WL 982805, at *4 (S.D. Ohio Apr. 13, 2009).

The only actual transaction from which Plaintiff's claims could theoretically arise is Fluent's role as an intermediary platform between Zeta and Amerilife—neither of which is an Ohio entity. (Richard Decl. ¶¶ 15, 18.) This transaction was not negotiated in Ohio, did not

involve Ohio parties, and had no connection to Ohio. (*Id.* ¶18.) Fluent never reached out to Plaintiff to create any business relationship, never conducted negotiations with him, and never agreed to any terms affecting Ohio. While Plaintiff alleges Fluent's nationwide business activities necessarily include Ohio this is irrelevant unless those activities gave rise to Plaintiff's claims, which they did not. (Richard Decl. ¶18). Transactions in different industries, involving different business units, or occurring at different times than the alleged conduct cannot establish the necessary nexus required by the long-arm statute. And jurisdiction cannot rest on fortuitous or attenuated contacts. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–23 (6th Cir. 2000).

Subsection (A)(2) similarly does not apply. This provision covers "contracting to supply services or goods in this state," but "[t]he actual transaction of business *in-state* is a prerequisite to the exercise of long-arm jurisdiction under § 2307.382(A)(2)." *Reg Transp. Servs., LLC v. Dutch Miller Chrysler/Jeep/Ram*, No. 2:18-cv-1176, 2019 WL 3413858, at *3 (S.D. Ohio July 29, 2019) (emphasis in original). Jurisdiction under this subsection is proper only when the defendant was obligated to deliver "goods or services *in Ohio*." *Id.* (emphasis in original). Fluent did not supply any services or goods in Ohio related to this matter. The only relevant transaction here—the automated call transfer—occurred between two non-Ohio entities (Zeta and Amerilife) and was negotiated and performed entirely outside Ohio. (Richard Decl. ¶ 18.) Fluent did not contract with any Ohio resident or Ohio entity to perform any service related to the challenged call. (Second Richard Decl. ¶ 4.) Plaintiffs' SAC alleges no facts suggesting otherwise. Subsection (A)(2) is not satisfied.

Subsection (A)(3) requires an "act" by Fluent in Ohio. Plaintiff identifies none, and Fluent's declarations confirm:

- Fluent had no operations in Ohio relevant to the call-transfer. (Richard Decl. ¶¶ 3–12.)

- Fluent does not initiate calls and did not call Plaintiff. (*Id.* ¶ 13; Second Richard Decl. ¶ 6.)

- Fluent did not direct Zeta to call Plaintiff or anyone else. (Second Richard Decl. ¶ 7.)

Moreover, a defendant must actually commit the tortious act for jurisdiction to attach under these subsections. *Fabec v. Debt Mgmt. Partners, LLC*, No. 1:18-CV-01537-DCN, 2018 WL 4830085, at *7 (N.D. Ohio Oct. 4, 2018). But here Fluent did not place the call, did not request that Zeta place the call, nor was the call placed on Fluent's behalf. (Richard Decl. ¶¶ 13, 17, Second Richard Decl. ¶7.) Without having made the calls, Fluent could not have committed the tortious conduct necessary to trigger these provisions of the long-arm statute. Plaintiff cannot satisfy subsection (A)(3).

### 2. Exercising personal jurisdiction over Fluent would violate due process.

Even if Ohio's long-arm statute authorized jurisdiction—which it does not—exercising jurisdiction over Fluent would violate the Fourteenth Amendment's Due Process Clause. The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the forum state so that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Sixth Circuit applies a three-part test for specific jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant must have a substantial enough connection with the forum state to make jurisdiction reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). Plaintiff fails to satisfy all three elements.

First, Fluent has not purposefully availed itself of Ohio's jurisdiction. While Fluent has conducted certain business with Ohio entities, none of those contacts relate to the Medicare insurance telemarketing at issue. The relevant inquiry is whether Fluent has purposefully established minimum contacts related to Plaintiff's claims, not whether it has any contacts with Ohio. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017).

Purposeful availment requires that the defendant itself created contacts with the forum, not that the plaintiff or a third party did so. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). Contacts arising only from "the unilateral activity of another party" are insufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

The record shows:

- Fluent did not initiate or direct calls to Ohio. (Richard Decl. ¶¶ 13, 17; Second Richard Decl. ¶¶ 6–7.)

- Fluent did not know Plaintiff was located in Ohio. (Second Richard Decl. ¶ 5.)

- Fluent did not design any Ohio-targeted campaign. (*Id.* ¶¶ 4–7.)

Plaintiff identifies no purposeful contact with Ohio by Fluent. Under *Walden*, that ends the inquiry.

Plaintiff's latest theory of purposeful availment depends on attributing Zeta's calls to Fluent based on a supposed agency relationship. But it does so mostly through conclusory allegations of agency that the Court need not accept absent support from well-plead facts. *In re Com. Money Ctr., Inc.*, No. 102CV16000, 2005 WL 2233233, at *17 (N.D. Ohio Aug. 19, 2005), *aff'd sub nom. Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007)

The Southern District of Ohio addressed this exact scenario in *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577 (S.D. Ohio 2016)—a TCPA case where a plaintiff attempted to hale a national platform defendant into Ohio based on telemarketing calls placed by an unrelated third party. The allegations in *Johansen* closely parallel those here, and the court's reasoning forecloses Plaintiff's theory.

In *Johansen*, the plaintiff asserted that a third-party caller made calls to generate sales leads for HomeAdvisor and thus that HomeAdvisor should be subject to jurisdiction in Ohio. *Id.* at 581. The SAC here is indistinguishable. Plaintiff alleges that Fluent "directed," "controlled," or "benefitted from" Zeta's calling practices but pleads no facts showing that Fluent supervised, directed, or had authority over Zeta's dialing. As in *Johansen*, Plaintiff alleges no facts showing:

- control over who was called;

- supervision of the telemarketer;

- direction of the calling campaign;

- involvement in the decision to call Plaintiff; or

- any communication with Plaintiff.

*Johansen* also emphasizes that ratification cannot create jurisdiction unless the plaintiff pleads both (1) a principal–agent relationship and (2) the defendant's actual or constructive knowledge of the caller's conduct. *Id*. at 587–88. Judge Marbley held that because HomeAdvisor had "no information" about the calls, ratification was impossible. *Id*. at 588.

The same is true here. Fluent did not know Plaintiff's physical location, did not know Zeta was calling an Ohio resident, and did not review or receive Zeta's call records. (Richard Decl. ¶¶ 13, 17; Second Richard Decl. ¶¶ 5–7.) Without knowledge or an underlying agency relationship, ratification is legally impossible.

Finally, *Johansen* held that a defendant's mere receipt of benefit from a telemarketer's activities does not establish jurisdiction via agency. 218 F. Supp. 3d at 588-89. Plaintiff's allegation that Fluent profited from call-transfer activity—even if accepted—is irrelevant absent factual allegations of control or agency. *Id*. And here the facts are even cleaner: Fluent facilitated a single automated, post-dial transfer between two non-Ohio entities, without any knowledge of the consumer's physical location. (Richard Decl. ¶¶ 15–18; Second Richard Decl. ¶¶ 4–7.)

In short, *Johansen* squarely forecloses Plaintiff's jurisdictional theory. Plaintiff alleges no facts showing that Fluent controlled Zeta, authorized Zeta's calls, knew about the calls, or ratified Zeta's conduct. Zeta's Ohio contacts therefore cannot be imputed to Fluent.

And the Southern District of Ohio reached the same conclusion in another closely analogous case, *Lucas v. DeSilva Automotive Services, LLC*, No. 1:16-cv-790, 2018 WL 2020744 (S.D. Ohio May 1, 2018). There, the plaintiff sought to hale out-of-state defendants into Ohio based on telemarketing calls placed by unrelated third-party callers who used the defendants' telephony infrastructure. The court rejected personal jurisdiction, explaining that the defendants did not place the calls at issue, had no control over who such businesses call, and did not direct or supervise the telemarketing activity. 2018 WL 2020744, at *5–11. Even if the defendants' systems were used by a downstream customer to transmit calls into Ohio, the court held that this was insufficient to show purposeful availment. *Id*. at *7–9 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

*Lucas* is materially indistinguishable from this case. Fluent did not initiate the calls, did not

direct Zeta to call anyone, did not control Zeta's dialing practices, and did not know the consumer's physical location. (Richard Decl. ¶¶ 13, 17; Second Richard Decl. ¶¶ 5–7.) Any Ohio contact arose solely from Zeta's independent decision to allegedly place calls from outside the state. As *Lucas* confirms, such incidental, third-party-generated contacts cannot be imputed to an out-of-state technology provider for purposes of specific jurisdiction. *See* 2018 WL 2020744, at *7–9. This case presents an even clearer lack of purposeful availment: Fluent's platform did not initiate calls, had no geographic targeting, and performed only an automated connection between two non-Ohio entities.

Specific jurisdiction also requires that the claims "arise out of or relate to" the defendant's purposeful contacts with the forum. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007). Because Fluent has no relevant contacts with Ohio, this requirement cannot be satisfied. Moreover, Plaintiff's claims arise solely from Zeta's independent calling decisions— not from any conduct by Fluent. (SAC ¶¶ 2–3, 29, 71; Second Richard Decl. ¶¶ 5–7.)

Separately, exercising jurisdiction would be unreasonable. Fluent would be forced to defend itself in a forum where it has no offices, no property, and no business operations related to the alleged conduct. (Richard Decl. ¶¶ 4-11.) Its one remote employee and one remote contractor in Ohio have no connection to the platform at issue. (*Id.* ¶ 8.) All relevant witnesses and evidence are located outside Ohio—Fluent's platform operations are in Delaware and New York, Zeta is located outside Ohio, and Amerilife is located outside Ohio. (*Id.* ¶ 12.) Ohio's only connection is Plaintiff's residence, which alone cannot render jurisdiction reasonable when weighed against the complete absence of any other relevant connections. Litigating in this forum would impose burdens unrelated to any Ohio interest. *See Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987).

Because Ohio's long-arm statute does not reach Fluent and exercising jurisdiction would violate due process, the claims against Fluent must be dismissed under Rule 12(b)(2).

**C.** **The SAC fails to state a claim against Fluent and must be dismissed per Rule 12(b)(6).**

To survive a Rule 12(b)(6) motion, a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678.

Plaintiff contends that Fluent is liable for Zeta's alleged violations of the TCPA under theories of actual authority, apparent authority, ratification, and participation in a common enterprise. (SAC. ¶39.) But Plaintiff relies on conclusory labels of "agency," "control," and "benefit," without any factual allegations supporting an agency relationship between Fluent and Zeta. Those allegations are insufficient under *Twombly* and *Iqbal*.

1. **Plaintiff does not—and could not—allege that Fluent itself initiated or made any of the calls at issue.**

The SAC alleges that Zeta initiated all of the telemarketing calls. (SAC ¶¶ 2–3, 29, 71.) Plaintiff does not allege that Fluent dialed his number, selected his number for dialing, or took any action that qualifies as "initiating" a call under the TCPA.

And Fluent's declarations confirm that amendment would be futile because Fluent:

- "did not make the alleged telemarketing calls to Plaintiff" (Richard Decl. ¶ 13);

- did not request or instruct Zeta to make any calls (*id*. ¶ 17; Second Richard Decl. ¶ 7);

- is "not capable of initiating outbound telephone calls" (Second Richard Decl. ¶ 6); and

- played no role in Zeta's determination of whom or when to call (Second Richard Decl. ¶ 7).

Because the SAC does not—and cannot—allege that Fluent initiated any call, Plaintiff must rely entirely on a vicarious-liability theory. As shown below, those allegations are even more deficient.

2. **Plaintiff fails to plead actual authority because it alleges no facts showing Fluent controlled Zeta's calling conduct.**

Actual authority requires showing that an agent reasonably believes, in accordance with the

principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006); *see* Restatement (Second) of Agency § 26 (similar). Actual authority may be implied but regardless of whether it is implied or not, actual authority is concerned with the actions of the principal and the reasonable beliefs of the agent.

Here, the SAC alleges no facts showing that Fluent:

- instructed Zeta to call Plaintiff or any other consumer;

- exercised authority over Zeta's call lists, dialing campaigns, or calling practices;

- supervised Zeta's telemarketing activities; or

- retained the right to control how, when, or to whom Zeta placed calls.

These omissions are fatal to any claim of actual authority.

### 3. Plaintiff fails to plead apparent authority because Fluent made no representation to Plaintiff.

The SAC alleges that Fluent "cloaked Zeta with apparent authority by allowing [Zeta] to present itself as an authorized participant in Fluent's call-routing eco-system". (SAC ¶54.) This allegation is insufficient to establish apparent authority. Apparent authority is created by the principal's manifestations to the third party; the principal's communications with the supposed agent are not relevant to the question of apparent authority. *Cap. Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986).

Plaintiff alleges no such manifestation by Fluent to himself. Nor could it. Fluent never communicated with Plaintiff. (Richard Decl. ¶ 16.) Fluent never presented itself as responsible for Zeta's calls. The bottom line is that the SAC alleges no representation by Fluent on which Plaintiff relied which is fatal to any theory of apparent authority.

### 4. Plaintiff fails to plead ratification because he alleges no principal–agent relationship and no knowledge by Fluent of Zeta's conduct.

*Johansen* explains ratification cannot apply where the alleged agent "is not an agent and does not purport to be one." 218 F. Supp. 3d at 586 (citation omitted). Moreover, ratification requires "knowledge of material facts," including knowledge of the challenged calling. *Id.* at 587–88.

Plaintiff pleads neither element.

**First**, Plaintiff alleges no facts showing Zeta was Fluent's agent. The SAC offers only conclusory labels. It alleges no facts showing Fluent had the right to control Zeta's telemarketing, supervised Zeta, or otherwise formed a principal–agent relationship.

**Second**, Plaintiff does not allege sufficient knowledge by Fluent regarding the calls at issue. As in *Johansen*, Fluent had no information that the telemarketer was calling the plaintiff. 218 F. Supp. 3d at 588. Without knowledge, ratification is legally impossible.

*Johansen* rejected the theory—mirrored in the SAC—that a defendant may be liable because it "benefitted from" call traffic. The court held that "the mere receipt of benefit is insufficient" to plead ratification. *Id*. at 585. Plaintiff alleges nothing more. Courts in this District have repeatedly rejected TCPA claims against defendants whose alleged role is limited to providing technological or infrastructural support—precisely the role attributed to Fluent in the SAC. In *Lucas v. Telemarketer Calling From (407) 476-5670*, the court dismissed TCPA claims against several defendants accused of "assisting," "facilitating," or "enabling" telemarketers by providing telephone numbers, caller-ID services, or platform access. No. 1:12-cv-630, 2014 WL 1119594, at *6–7 (S.D. Ohio Mar. 20, 2014) (Report and Recommendation). The court held that the TCPA does not impose liability for "aiding and abetting," and that entities who merely "have some role in the causal chain of communication" are not "callers" under the statute. *Id*. at *6–7, *10–11. The plaintiff's conclusory allegations of "control" and "supervision" were insufficient because they did not identify any facts showing the defendants directed or authorized the telemarketing conduct. *Id*. at *6–7.

And in *Lucas v. DeSilva Automotive Services, LLC*, the Southern District of Ohio again dismissed a TCPA claim against out-of-state defendants who provided software and infrastructure but did not themselves place or control the calls. No. 1:16-cv-790, 2018 WL 2020744, at *5–11 (S.D. Ohio May 1, 2018). The court emphasized that defendants who "do not control who [the caller] calls" and who play only a passive, technical role in the routing or transmission of calls cannot be held liable under the TCPA. *Id*. at *7–9.

These cases reinforce the conclusion compelled by *Johansen*: providing a platform that may

be used in connection with telemarketing—without initiating calls, directing the calling campaign, determining who is called, etc.—does not establish direct or vicarious liability under the TCPA. The SAC alleges nothing more than that Fluent operated an automated call-transfer system and benefitted from call-volume; it alleges no facts showing that Fluent instructed, supervised, controlled, or ratified Zeta's calling activity. Under the consistent precedent of this District, such allegations are insufficient as a matter of law.

### 5. Plaintiff's "common enterprise" theory is not available to private parties and pleads conclusions, not facts.

The SAC alleges a "common enterprise" between Fluent and Zeta (SAC ¶¶ 56–57), but the TCPA does not provide that path to recovery for private plaintiffs. *See* 47 U.S.C. § 227(b)(3) and § 227(c)(5) (providing private rights of action against individual defendants for specific violations). Even if it were a valid theory of recovery, Plaintiff alleges no facts showing shared control, unified operations, or joint conduct between Fluent and Zeta—such conclusory allegations fail under *Twombly*.

### CONCLUSION

Plaintiff's theories of liability do not withstand scrutiny. The SAC identifies Zeta as the caller and alleges no facts showing that Fluent placed, directed, influenced, or even knew about the calls at issue. The only conduct attributed to Fluent—a single automated, out-of-state transfer between two non-Ohio entities—is not telemarketing, is not tortious, and is not a basis for personal jurisdiction. It is not a basis for Article III standing either.

What the SAC attempts to do is convert a passive, mechanical routing event—occurring entirely outside Ohio and entirely downstream of Zeta's independent dialing—into traceability, jurisdiction, and liability. The governing law does not permit that result. Article III requires an injury fairly traceable to Fluent's conduct; the SAC alleges none. Ohio's long-arm statute requires conduct directed at Ohio; the SAC identifies none. And the TCPA requires either a caller or a party on whose behalf the caller acted; Fluent is neither.

The claims against Fluent should be dismissed:

1. Under Rule 12(b)(1) because Plaintiff's alleged injury is not traceable to Fluent;

2. Under Rule 12(b)(2) because Fluent lacks contacts with Ohio sufficient to support personal jurisdiction; and

3. Under Rule 12(b)(6) because the SAC fails to allege any viable theory of TCPA liability against Fluent.

Dismissal should be without leave to amend. Plaintiff has already amended multiple times, and no additional pleading can alter the fundamental fact that Fluent did not make—and did not cause to be made—the calls at issue.

Dated: December 10, 2025    Respectfully submitted,

       /s/ *Jeffrey T. Perry*
       Jeffrey T. Perry (#0088989)
       CAMPBELL PERRY, LLC
       7240 Muirfield Drive, Suite 120
       Dublin, OH 43017
       (614) 668-8442
       (614) 675-2210 fax
       jeff@campbellperrylaw.com

       /s/ *Jason B. Sykes*
       Jason B. Sykes (#44369)
       NEWMAN LLP
       1201 Second Avenue, Suite 900
       Seattle, WA 98101
       (206) 274-2800
       (206) 274-2801
       jason@newmanlaw.com
       (*Pro Hac Vice* application forthcoming)

       *Counsel for Fluent, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the United States of America and the laws of the State of Ohio that on December 10, 2025, I caused true and correct copies of the foregoing documents to be served by the method(s) listed below on the following interested parties:

**Via CM/ECF**

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Pro Hac Vice*

Brian T. Giles (0072806)
The Law Offices of Brian T. Giles
1470 Apple Hill Road
Cincinnati, Ohio 45230
(513) 379-2715
Brian@GilesFirm.com

*Attorneys for Plaintiff*

I hereby certify under the penalty of perjury that the foregoing is true and correct.


Executed on December 10, 2025.

/s/ *Jeffrey T. Perry*
Jeffrey T. Perry (#0088989)