**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY JENKINS, on behalf of himself and others similarly situated, | : | |
| | : | |
| | : | Case No. 1:23-cv-00558-JPH |
| *Plaintiff(s),* | : | |
| | : | District Judge Jeffery P. Hopkins |
| v. | : | |
| | : | |
| ZETA GLOBAL CORP. and FLUENT, INC. | : | |
| | : | |
| | : | |
| *Defendants.* | : | |

## PLAINTIFF'S OPPOSITION TO FLUENT, INC.'S MOTION TO DISMISS

### INTRODUCTION

Fluent, Inc.'s motion to dismiss should be denied because the Second Amended Complaint plausibly alleges that Zeta Global Corp. placed unlawful telemarketing calls as part of Fluent's call-transfer lead-generation business model. Plaintiff alleges that Zeta's outbound calls were not made for Zeta's independent purposes; they were placed to generate leads that Fluent accepted, routed, and sold to paying advertisers. Fluent profited from each successful transfer and compensated Zeta for producing the calls that Fluent could monetize.

Fluent's attempt to avoid liability by pointing to a third-party dialer is exactly why the TCPA recognizes vicarious liability under agency principles. Plaintiff alleges that Fluent exercised control over the transfer conditions and routing, retained the ability to discipline vendors for noncompliance, and knowingly accepted the financial benefits of vendor-generated telemarketing calls. Those allegations support a reasonable inference that Zeta acted on Fluent's behalf and that Fluent ratified the unlawful calls by profiting from them. At this stage, Plaintiff need only plausibly plead the relationship—he need not prove it without discovery.

1

For the same reasons, Plaintiff has adequately pled personal jurisdiction. Zeta placed the telemarketing calls into Ohio, and Plaintiff plausibly alleges those calls were placed on Fluent's behalf and for Fluent's benefit as part of Fluent's call-transfer marketplace. Fluent cannot structure a business around monetizing transferred calls generated by outbound telemarketing and then avoid jurisdiction in the forum where the calls were received simply because it outsourced dialing to an intermediary. At minimum, if the Court has any doubt regarding the scope of Fluent's control, knowledge, or ratification of Zeta's calls, it should permit narrowly tailored jurisdictional discovery rather than dismissing the claims against Fluent at the pleading stage.

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction over the defendant exists. Where "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (internal citations and quotation marks omitted). "In deciding a Rule 12(b)(2) motion, the Court 'construe[s] the facts in the light most favorable to the non-moving party' and 'does not weigh the controverting assertions of the party seeking dismissal.'" *Opportunity Fund, LLC v. Epitome Sys.*, 912 F. Supp. 2d 531, 538 (S.D. Ohio 2012) (Marbley, J.) (citing *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (emphasis in original)).

## ARGUMENT

1.  **Jenkins has plausibly pled that Zeta placed calls on behalf of Fluent.**

The Sixth Circuit applies the "on-whose-behalf" standard when determining vicarious liability under the TCPA: the party on whose behalf a solicitation is made bears ultimate responsibility for any violations of the TCPA. *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 897-98 (6th Cir. 2016). The phrase "on-whose-behalf" has been treated as a term of art that blends (1) federal common-law agency principles, such as whether and to what extent one entity controlled the other, and (2) policy considerations designed to address which entity was most culpable in causing a TCPA violation. *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 899 (6th Cir. 2016). The goal is to determine "the source of the offending behavior that Congress intended to curtail." *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 901 (6th Cir. 2016) (*Palm Beach Golf Ctr.*, 781 F.3d at 1257).

Here, Jenkins alleges that Zeta called consumers on Fluent's behalf. It did not place telemarketing calls for its own independent business purpose. SAC ¶¶3, 29, 56-57. It placed calls to generate leads for Fluent. SAC ¶¶3, 13, 39-42, 52, 56-57. Fluent monetized those leads by transferring them to companies that paid for the leads. SAC ¶¶ 39-57. Fluent controlled when Zeta's calls would be transferred, to whom they would be transferred, and paid Zeta for making the calls. *Id.* Fluent also controlled the economics of the relationship. SAC ¶¶40-45. Advertisers paid Fluent, not Zeta, for transferred calls, and Fluent paid Zeta to place the calls. Thus, Fluent was not merely a middleman facilitating connections between Zeta and unknown advertisers for calls Zeta would have made anyway; Fluent paid Zeta to place the calls.

Control in this context does not require Fluent to sit over Zeta's shoulder and supervise every dial. Plaintiff alleges that Fluent controlled the aspects of the arrangement that made the telemarketing profitable and operationally possible: Fluent dictated the transfer conditions, determined whether and when calls would be accepted, routed calls to paying advertisers based on

3

Fluent's rules, and paid vendors based on the success and value of the transferred calls. Vendors like Zeta were incentivized to dial consumers—and to do so in the manner Fluent's transfer rules required—because Fluent controlled the funnel through which those calls became revenue. Those allegations plausibly establish the degree of control necessary at the pleading stage.

Fluent repeatedly relies on sworn declarations to dispute Plaintiff's factual allegations and recast the relationship between Fluent and Zeta. But on a motion to dismiss for failure to state a claim, the Court must accept Plaintiff's well-pled allegations as true and draw reasonable inferences in Plaintiff's favor. Fluent's attempt to litigate disputed facts through declarations is premature. The Second Amended Complaint plausibly alleges an agency relationship and a call-transfer model in which Fluent profited from telemarketing leads generated by vendors like Zeta. Whether Fluent can ultimately disprove those allegations is a merits question for discovery and summary judgment—not dismissal at the pleading stage.

Courts hold a TCPA claimant in Jenkins's circumstance need only raise the "reasonable inference" that the caller acted as Defendant's agent: "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations." *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363, 2024 U.S. Dist. LEXIS 93370, at *35 (W.D. Tex. May 23, 2024). In other words, the Court should not allow Defendants to benefit from the obfuscation they created. That is a familiar tactic that courts reject. When callers, like Zeta here, "refuse[] to identify themselves[,]" Plaintiff need only raise the "reasonable inference" Defendants either "apparently authorized or ratified" the calls, even if Defendants did not make them themselves. *Cunningham*, 2024 U.S. Dist. LEXIS 93370, at *35;

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016), as revised (Feb. 9, 2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations.").

And considering how telemarketers obfuscate their calling practices, a TCPA claimant need not meet the "usual" pleading standard under a vicarious theory: "[v]icarious liability under the TCPA is a fact-intensive inquiry that does not require the usual level of particularity from the complaint." *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583, 2021 U.S. Dist. LEXIS 78307, at *12 (D. Mass. Apr. 22, 2021) (cleaned up). The standard recognizes that "the information necessary to connect all the players is likely in [Defendants'] sole possession." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). Thus, Jenkins need only plausibly allege the theory under one of three theories, pleading either actual authority, apparent authority, or ratification. *Workman v. CarGuard Admin., Inc.*, No. CV-23-00961, 2024 U.S. Dist. LEXIS 11476, at *8 (D. Ariz. Jan. 22, 2024).

Although he is not required to, Jenkins has also alleged a principal-agent relationship between Fluent and Zeta. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01. Actual authority may be given expressly—such as when the principal states "in very specific or detailed language" how an agent is to act—or impliedly—such as when an agent acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *5 (M.D.N.C. July 22, 2020) (denying motion to dismiss in TCPA vicarious liability case); *Rapid Response*, 251 F. Supp.

5

3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business …."). Actual agency "does not require the principal to specify the singular acts for which her or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *John v. Keller Williams Realty, Inc.*, No. 619CV1347ORL40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent tofurther the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing RESTATEMENT (THIRD) OF AGENCY § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant actual directed an agent's calls by alleging facts giving rise to an inference that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, Fluent manifested assent that Zeta would act on its behalf by structuring its business around outbound telemarketing calls that could be transferred through Fluent's platform and monetized by Fluent. SAC ¶¶ 3, 13, 39–42. Zeta, in turn, manifested assent by placing telemarketing calls as part of its relationship with Fluent and for Fluent's benefit. SAC ¶¶ 3, 29, 56. Zeta did not place those calls for its own independent business purpose; it placed them to generate leads that Fluent could accept, route, and sell to advertisers. SAC ¶¶ 3, 13, 29, 56.

6

Fluent also exercised the requisite control. Fluent dictated the conditions under which Zeta's calls could be transferred, including advertiser-specific requirements, consent conditions, and suppression compliance. SAC ¶¶ 40–42, 44–45. Fluent controlled whether a call would be accepted, when it would be transferred, and to whom it would be routed. SAC ¶¶ 41–42, 52. Fluent further retained the ability to discipline or terminate vendors for noncompliance with its requirements. SAC ¶ 45. That level of control satisfies the Restatement's standard even if Fluent did not supervise every aspect of Zeta's dialing practices. See Restatement (Third) of Agency § 1.01 cmt. c.

Finally, Jenkins pleads that Fluent ratified Zeta's illegal telemarketing calls by profiting from them. Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." RESTATEMENT (THIRD) OF AGENCY § 4.01(1).The calls were made to generate leads for Fluent's clients, and Fluent monetized those calls by routing a paying advertiser. SAC ¶¶ 3, 13, 29, 52, 56. Those facts establish that Fluent ratified Zeta's illegal telemarketing.  SAC ¶¶ 39, 53, 56–57.[1]

Ratification is plausibly alleged because Fluent allegedly accepted and monetized the transferred calls generated through Zeta's telemarketing, and continued compensating and using vendors to generate those leads. Plaintiff also alleges Fluent imposed compliance rules and suppression requirements, demonstrating awareness that unlawful calls were a known risk inherent in the model. At the pleading stage, Plaintiff is entitled to the reasonable inference that Fluent

---

[1] To the extent the SAC uses the term "common enterprise," Plaintiff does not rely on that phrase as an independent legal theory necessary to sustain liability. Plaintiff's vicarious liability theory stands on agency principles—actual authority, apparent authority, and ratification—each of which is plausibly alleged. The Court can deny the motion to dismiss based on those agency allegations alone.

knowingly accepted the benefits of vendor-generated telemarketing and continued the arrangement despite the foreseeable and recurring risk of unlawful calls. Those allegations are sufficient to plead ratification and to permit discovery into Fluent's knowledge, compliance practices, and vendor oversight.

Similarly, Plaintiff alleges a concrete invasion of privacy from repeated unlawful telemarketing calls. Traceability is satisfied because Plaintiff plausibly alleges that the calls were made as part of Fluent's lead-transfer system and on Fluent's behalf through its vendor relationship with Zeta. At the pleading stage, Plaintiff is not required to prove the agency relationship; he must plausibly allege facts supporting it. Plaintiff has done so by alleging that Fluent compensated Zeta to place calls generating leads, controlled when and to whom calls would be transferred, and monetized those transferred calls by selling them to paying advertisers. Those allegations plausibly connect Plaintiff's injury to Fluent's business practices, and the injury would be redressable through damages and injunctive relief against Fluent.

## 2. An agents activities can subject a principal to personal jurisdiction in the forum state.

Personal jurisdiction may be exercised over Fluent based on the forum contacts of its agent, Zeta. That proposition is well grounded in TCPA law. Both the Federal Communications Commission, which implements the TCPA, and federal courts, including the Sixth Circuit, recognize that TCPA liability is governed by federal common-law principles of agency. See In re Joint Petition Filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6574 (2013) ("[A] seller . . . may be held vicariously liable under federal common law principles of agency for violations of the TCPA that are committed by third-party telemarketers."); *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792

F.3d 627, 635 (6th Cir. 2015); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015).

Plaintiff alleges that Zeta placed illegal telemarketing calls into Ohio as part of a call-transfer lead-generation arrangement that directly benefitted Fluent and was carried out on Fluent's behalf. Those allegations bring this case within Ohio's long-arm statute because the claims arise from forum-directed conduct: telemarketing calls placed into Ohio that injured an Ohio resident. Plaintiff is not asking the Court to exercise jurisdiction based on generalized, unrelated nationwide business. Rather, Plaintiff alleges that the specific conduct giving rise to the claims—illegal telemarketing calls—was directed to and received in Ohio, and that Fluent is responsible for those calls because they were made as part of Fluent's lead-generation system and for Fluent's economic benefit. At this stage, Plaintiff need only make a prima facie showing of jurisdictional facts, and the Court must credit Plaintiff's allegations and draw reasonable inferences in his favor.

Any other interpretation would allow companies to evade TCPA liability through creative contracting. *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014). As courts have repeatedly observed, Congress enacted the TCPA to protect individuals from the annoyance and invasion of privacy caused by unwanted telemarketing calls. *Smith v. State Farm Mut. Auto. Ins. Co.,* 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014). Sellers like Fluent remain in the best position to monitor and police TCPA compliance by the telemarketers they hire. Id. Permitting sellers to avoid liability by outsourcing telemarketing to third parties would leave consumers without an effective remedy, particularly where those telemarketers are judgment proof, unidentifiable, or located outside the United States. Id.

Because a seller may be held liable under the TCPA for the acts of its agent, it follows that a seller may also be subject to personal jurisdiction based on its agent's forum contacts. *See*

9

*Keim v. ADF MidAtlantic, LLC*, No. 12-80577-CIV, 2016 WL 4248224, at *3 (S.D. Fla. Aug. 10, 2016) (attributing agent's TCPA messages to principal for jurisdictional purposes); *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-5019, 2016 WL 1427648, at *2 (N.D. Cal. Apr. 12, 2016); *see also Suarez Corp. v. CBS, Inc.,* 23 F.3d 408, 1994 WL 142785, at *2–5 (6th Cir. 1994) (recognizing that personal jurisdiction may be imputed from an agent's forum contacts).

Fluent purposefully availed itself of Ohio by monetizing telemarketing calls placed into the forum. Plaintiff's theory is not that Fluent happened to receive a random call involving an Ohio number. The Second Amended Complaint alleges a structured arrangement: vendors like Zeta placed outbound telemarketing calls to consumers; Fluent's platform accepted and routed those calls; and Fluent sold the resulting call transfers to advertisers who paid for those leads. Fluent profited only if telemarketing calls were placed and successfully transferred. That is purposeful engagement with, and exploitation of, calls placed into Ohio. Fluent cannot insulate itself from jurisdiction by outsourcing the dialing to a vendor while controlling the transfer conditions and capturing the revenue generated by Ohio-directed calls.

To prevent evasion of liability, the FCC has made clear that vicarious liability under the TCPA does not require a formal agency relationship. *Keating,* 615 F. App'x at 371. Instead, liability may arise under a broad range of federal common-law agency principles, including actual authority, apparent authority, and ratification. *Id.* (*quoting Dish Network*, 28 F.C.C.R. at 6584); *In re Monitronics Int'l, Inc.,* No. 1:13-MD-2493, 2015 WL 1964951, at *5 (N.D.W. Va. Apr. 30, 2015). Likewise under Ohio law, a defendant cannot avoid personal jurisdiction by acting through a third-party agent. *Midmark Corp. v. Janak Healthcare Private, Ltd*., No. 3:14-cv-088, 2014 U.S. Dist. LEXIS 52652, at *12 (S.D. Ohio Apr. 16, 2014). As a threshold matter, courts assessing personal jurisdiction ask whether the third party was acting as the defendant's agent, whether

10

actual or apparent. *Cooley v. Valero Energy Corp.*, No. 2:11-cv-526, 2012 U.S. Dist. LEXIS 40291, at *22–23 (S.D. Ohio Mar. 20, 2012). If an agency relationship exists, "the minimum contacts with Ohio of the agent are also minimum contacts of the principal." *Id.* (quoting *Lachman v. Bank of Louisiana in New Orleans*, 510 F. Supp. 753, 759 (N.D. Ohio 1981)).

Courts applying the TCPA follow the same rule. Where a plaintiff plausibly alleges that unlawful telemarketing was carried out by an agent, the agent's forum contacts may be imputed to the principal for purposes of specific personal jurisdiction. See *Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-05019-BLF, 2016 U.S. Dist. LEXIS 49219, at *4–6 (N.D. Cal. Apr. 11, 2016); *Bagg v. USHealth Grp., Inc.*, No. 6:15-cv-1666-Orl-37GJK, 2016 U.S. Dist. LEXIS 52824, at *13 (M.D. Fla. Apr. 20, 2016). The Second Amended Complaint does not allege that Fluent itself dialed Jenkins's phone. Rather, it alleges that Zeta placed telemarketing calls on Fluent's behalf as part of Fluent's call-transfer business model. SAC ¶¶ 3, 29, 39–57. This Court would plainly have specific personal jurisdiction over Zeta based on its calls into Ohio. And the Court may likewise exercise personal jurisdiction over Fluent if Zeta was acting as Fluent's agent, as Plaintiff alleges. See *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861–62 (N.D. Ill. 2020) (exercising specific jurisdiction over principal based on agent's TCPA calls).

Fluent argues that it cannot be hauled into Ohio because it did not personally place the calls. That argument fails as a matter of law. Fluent's attempt to characterize itself as a passive platform is inconsistent with the allegations. Plaintiff alleges Fluent did not merely provide neutral infrastructure. Fluent allegedly paid Zeta to generate leads, dictated the conditions under which calls could be transferred, controlled whether the calls would be accepted and to whom they would be routed, and profited from the transfer event itself. That is not an incidental downstream connection; it is a business model built around telemarketing calls. These allegations plausibly

11

establish that Fluent's role was economically and operationally central to the telemarketing activity that injured Plaintiff in Ohio. The Federal Communications Commission has expressly recognized vicarious liability under the TCPA. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). As courts have emphasized, vicarious liability "plays an essential role in enforcing the TCPA," because sellers are in the best position to police their telemarketers, and the statute would be toothless if companies could avoid liability by outsourcing unlawful calls. See *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015).

### 3. If the Court Has Any Doubt as to Personal Jurisdiction, It Should Permit Jurisdictional Discovery Rather Than Dismiss the Case

Because Ohio's long-arm statute requires a separate inquiry from federal due process, and because the jurisdictional facts concerning the Fluent–Zeta relationship are disputed and uniquely within Fluent's possession, jurisdictional discovery is appropriate.A district court confronted with a Rule 12(b)(2) motion may permit jurisdictional discovery where the motion raises disputed issues of jurisdictional fact. The Sixth Circuit has long recognized that jurisdictional discovery is appropriate when the plaintiff makes a prima facie showing of jurisdiction and offers a reasonable basis to expect that discovery will reveal facts supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1456 (6th Cir. 1991); *C.H. By & Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). That threshold is intentionally low; courts permit jurisdictional discovery even where the plaintiff's showing is "very slim and largely speculative." *Beightler v. Produkte für die Medizin AG*, No. 3:07-cv-1604, 2007 U.S. Dist. LEXIS 68512, at *9 (N.D. Ohio Sept. 17, 2007).

Here, the motion to dismiss itself places jurisdictional facts in dispute. Plaintiff alleges that Zeta placed robocalls into Ohio on behalf of Fluent and did so at Fluent's direction and/or control. Whether Zeta acted as Fluent's agent—or whether Fluent authorized, controlled, or ratified Zeta's conduct—is a factual question that bears directly on purposeful availment and minimum contacts. Where personal jurisdiction turns on the existence and scope of an agency relationship, jurisdictional discovery is appropriate because "[t]he actions of an agent may establish minimum contacts over a principal." McFadin v. Gerber, 587 F.3d 753, 761 (6th Cir. 2009).

Courts routinely permit jurisdictional discovery in TCPA cases where agency or control over third-party callers would determine personal jurisdiction. *See, e.g., Salaiz v. Oscar Mgmt. Corp.*, EP-22-CV-114-DCG, 2025 WL 1794447 (W.D. Tex. June 25, 2025). If discovery confirms that Fluent directed, controlled, or knowingly benefitted from Zeta's calling activity, those facts would materially alter the jurisdictional analysis.

Plaintiff has also identified the specific jurisdictional facts that discovery would address, including the scope of any contractual or marketing relationship between Fluent and Zeta, whether Fluent received leads or revenue generated by Zeta's calls, and whether Fluent provided scripts, guidance, system access, targeting criteria, or compliance instructions to Zeta. These facts go directly to agency, ratification, and purposeful availment. Plaintiff's request for jurisdictional discovery is narrowly tailored to the specific factual dispute raised by Fluent's motion—namely, the nature and extent of Fluent's relationship with Zeta and Fluent's role in the telemarketing that injured Plaintiff in Ohio. Limited discovery should include:

(1) agreements governing Fluent's relationship with Zeta and similarly situated vendors;

(2) call transfer logs and routing records reflecting the geographic location of transferred calls;

(3) vendor compliance policies and suppression requirements provided by Fluent;

13

(4) payment records reflecting how Fluent compensated vendors for transferred calls;

(5) communications concerning lead quality, compliance issues, and vendor discipline; and

(6) any materials reflecting Fluent's involvement in establishing consent and targeting conditions

for calls eligible for transfer.

These categories go directly to agency, ratification, and purposeful availment, and they are

uniquely within Fluent's possession.

Accordingly, if the Court concludes that the present record is insufficient to resolve

personal jurisdiction as a matter of law, the proper course is to permit limited jurisdictional

discovery rather than dismissing the case outright. Any such discovery can be narrowly tailored to

the Fluent–Zeta relationship and the conduct alleged to give rise to jurisdiction, ensuring the issue

is resolved on a complete factual record consistent with Sixth Circuit precedent.

This case involves a modern call-transfer lead-generation model that depends on outbound

telemarketing to produce the product Fluent sells: transferred calls. Plaintiff alleges Fluent

structured, controlled, and profited from that system, while placing the dialing function in the

hands of vendors to create distance from the unlawful calls that predictably result. The TCPA's

protections would be undermined if entities that design and profit from telemarketing schemes

could avoid liability and jurisdiction simply by outsourcing dialing while keeping the economic

benefits and operational control over the transfer process. Plaintiff has plausibly alleged an agency

relationship and is entitled to proceed to discovery.

## CONCLUSION

Plaintiff has plausibly alleged that the calls he received were generated and transferred

through a lead-generation system designed to profit from outbound telemarketing and that Zeta

placed those calls on Fluent's behalf as part of that model. The Second Amended Complaint alleges that Fluent controlled the transfer conditions and routing, compensated vendors like Zeta for producing leads, and monetized the transferred calls by selling them to advertisers. Those allegations support vicarious liability under multiple agency theories and are more than sufficient at the pleading stage.

Fluent's motion asks the Court to resolve disputed factual issues based on declarations, rather than accepting Plaintiff's well-pled allegations and permitting discovery into a relationship that is uniquely within Fluent's possession. The TCPA's protections would be undermined if entities could structure lead-transfer marketplaces around unlawful telemarketing, profit from the resulting calls, and then avoid both liability and jurisdiction by outsourcing dialing to intermediaries.

For these reasons, Fluent's motion to dismiss should be denied. Alternatively, if the Court concludes the present record is insufficient to resolve personal jurisdiction, Plaintiff respectfully requests limited jurisdictional discovery narrowly tailored to the Fluent–Zeta relationship and the call-transfer conduct alleged in the Second Amended Complaint.

Dated: January 7, 2026

Plaintiff,
By Counsel,

By: */s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com

15

*Pro Hac Vice*

Brian T. Giles (0072806)
THE LAW OFFICES OF BRIAN T. GILES
1470 Apple Hill Road
Cincinnati, Ohio 45230
Telephone:  (513) 379-2715
Brian@GilesFirm.com